# CHARLESTON.

## W. R. Spring v. American Tel. & Tel. Co.

Submitted April 6, 1920.   Decided April 13, 1920.

1. Evidence—*Courts Do not Take Notice of Federal Departmental Acts not of General Public Interest.*

    The courts of this state take judicial notice of the laws of the United States, proclamations of the President of the United States and official acts of the heads of the executive departments of the federal government, of public notoriety or general public interest, but not of departmental acts having no such character. (p. 193).

2. Telegraphs and Telephones—*Federal Control is not Inconsistent With Owner's Duty to Extend and Maintain its Lines.*

    The complete and exclusive possession, supervision, control and operation of all the telegraph and telephone systems within the jurisdiction of the United States and of all of the equipment, supplies and materials belonging or pertaining thereto, for war purposes, by the government of the United States, authorized by Joint Resolution No. 38 of the 65th Congress and taken and assumed by the Postmaster General, under and by virtue of a proclamation issued by the President, is not inconsistent with right, power and duty on the part of an owner of such a system, to extend its lines and improve, maintain and repair it, within the period of such possession, supervision, control and operation. (p. 194).

3. Same—*Declaration for Negligent Injury Held not Demurrable on Ground of Federal Control.*

    Though there may be no right of action against a telegraph and telephone company, for damages for an injury inflicted by the negligent use of a vehicle owned by it, while driven by an agent or employee of the federal government, within the period of such possession, supervision, control and operation and in the operation of such system, a count in a declaration against such owner, seeking recovery of such damages and charging that the defendant, while using such vehicle in the operation of such system, by its servants, agents and employees, so inflicted the injury, cannot be successfully demurred to, on the ground of such federal control of its telegraph or telephone system at the date of the injury. (p. 194).

Case Certified from Circuit Court, Preston County.
86 W. Va.

Action by W. R. Spring against the American Telegraph & Telephone Company. Demurrer to declaration overruled, and decision certified for review.

*Order Affirmed.*

E. E. *Parrack,* for plaintiff.
*Martin & Seibert,* for defendant.

Poffenbarger, Judge:

Deeming itself not liable for the injury complained of in the declaration filed in this case, the defendant demurred to the declaration, and the court below, having overruled the demurrer, has certified its decision thereon to this court for review.

The purpose of the action is recovery of damages for an injury to the plaintiff's automobile, by a collision with one of the defendant's motor trucks, on a highway, which, the declaration alleges, was occasioned by the negligence of the defendant, its agents and employees, in the driving and management of the motor truck. The injury, as set forth in the declaration, occurred, August 18, 1918, while the defendant's telephone and telegraph lines, offices, equipment, supplies and materials were under the supervision and control, and in the possession, of the government of the United States, under and by virtue of Joint Resolution No. 38 of the 65th Congress, approved, July 16, 1918, and the President's proclamation of July 22, 1918, by which he took possession and assumed control and supervision of "every telegraph and telephone system, and every part thereof, within the jurisdiction of the United States, including all equipment thereof and appurtenances thereto whatsoever and all materials and supplies," and authorized and directed the exercise of such supervision, possession and control by the Postmaster General.

Judicial notice of the joint resolution, the proclamation and the fact that all telegraph and telephone lines were under federal control, management and operation, on the alleged date of the injury complained of, must be readily and unqualifiedly admitted. *Coeu D'Alene etc. Co.* v. *Miners' Union,* Fed. 260; *Prince* v. *Skillin,* 71 Me. 361; *Heath* v. *Wallace,* 138 U. S. 573; *Caha* v. *United States,* 152 U. S. 211; 15 R. C. L. p. 1109. In so far as they or any of them may constitute ground of defense, they are, therefore, available on the demurrer. It is obviously

unnecessary to plead in any proceeding, what is within the judicial knowledge of the court. Sec. 4, of ch. 13, Code, does not preclude judicial notice of these matters. It pertains only to laws of other states and of the United States. As to the former, it is a liberalizing or enabling statute, adding subjects of judicial notice. 15 R. C. L. p. 1071. As to laws of the United States, it is merely declaratory. 15 R. C. L. p. 1064.

The recent state and federal decisions invoked in support of the demurrer were all rendered in cases involving relations, situations, facts and causes of action materially different from those upon which this action is predicated. *N. P. Railway Co.* v. *North Dakota,* 63 L. ed. S. C. R. 533, *Dakota Central Telephone Co.* v. *South Dakota,* 250 U. S. 163, and *Public Service Com.* v. *N E. Tel. and Tel. Co.,* 232 Mass. 463, 63 L. ed. S. C. R. 544, involved questions pertaining to the validity of federal rates on intrastate business, different from those prescribed by state authority,—railroad rates, in the first and telephone rates in the other two. They are conclusive of the validity and effectiveness of the congressional and federal executive action and of its supremacy over state laws and state executive acts. Considered in connection with the joint resolution and proclamation, they also affirm completeness and exclusiveness of federal control of telegraph and telephone lines, equipment, supplies and materials, as well as of such railway lines as were taken over by the government. But none of them involved the precise question we have here, liability of a telephone company for an injury inflicted by the use of its property, while federal control and operation obtained. Rights of action against the Western Union Telegraph Company, for negligent delay in the transmission of telegrams, were denied by the courts of Arkansas, Alabama and Texas, respectively, in *Western Union Tel. Co.* v. *Davis, Candidate* v. *Western Union Tel. Co.,* and *Western Union Tel. Co.* v. *Wallace,* the decisions in which have not yet been officially reported. The ground of each of them, as disclosed by copies of the opinions filed with the demurrant's brief, is federal control obtaining at the dates of the wrongs complained of. As those wrongs were clearly attributable to, and connected with, the operation of the company's lines, the decisions may be sound,

but they are not necessarily applicable as precedents, in this case.

Unlike the Railroad Control Act of March 21, 1918, Barnes' Fed. Code, secs. 10156 to 10169, Joint Resolution No. 38, Barnes' Fed. Code. sec. 10170, authorizing federal control of telegraphs and telephones, is silent as to rights of action against telegraph and telephone companies, arising while their lines are under such control, wherefore much that is said in the decisions of cases arising under the Railroad Control Act is not applicable here. That act expressly provides that actions at law or suits in equity may be brought by or against the carriers, while under federal control. Notwithstanding this provision, General Order No. 50 of the Director General of Railroads, required actions, suits and proceedings which, in the absence of federal control, might be instituted against railroad companies, to be brought directly against the Director General. In *McGregor* v. *Great Northern R. Co.,* 172 N. W. 841, 4 A. L. R. 1635, it was held that one whose cause of action had arisen and whose action had been commenced, before the passage and approval of the Railroad Control Act, was entitled to prosecute it to final judgment against the railroad company, although the cause of action had arisen while the railroad was under federal control. In *Lavalle* v. *N. P. Railway Co.,* 172 N. W. 918, 4 A. L. R. 1659, and *Gowan* v. *McAdoo, Director General,* 173 N. W. 440, the Supreme Court of Minnesota, held General Order No. 50 void, on the ground that it contravened the statute, conferring right to sue the railroad company.

The Act of Congress, authorizing federal possession, control and operation of transportation systems, passed, Aug. 29, 1916, like Joint Resolution No. 38, was silent as to rights of action against carriers while under federal control. By proclamation dated, Dec. 29, 1917, the transportation systems of the country passed under such control. Hence, they were operated by the government for a period of nearly three months before the Railroad Control Act was passed, in which no doubt many causes of action arose and many suits were brought directly against the carriers. In *McGregor* v. *Great Northern R. Co.,* cited, the cause of action arose and the action was brought within said period, wherefore the decision in that case is direct authority for

right of action against a public utility company under federal control by virtue of a statute, silent as to such right. In a somewhat similar case, *Bryant* v. *Pullman Co.*, 177 N. Y. S. 488, the right of action was sustained, upon the theory that the government was the lessee and the company the lessor of its cars, with right of recourse against the lessee for indemnity for liability, to be met in adjustment of the rental or compensation for the use of the cars. The injury occurred on a car in government use, before the Railroad Control Act was passed. For reasons now to be stated, we enter upon no inquiry as to the correctness of these decisions.

Though government control of the telephone and telegraph systems, including equipment, supplies and materials, may have been exclusive and complete, on the date of the injury complained of, the defendant may have been using the motor truck by which the injury was inflicted, in and about its own business. The government did not take over the company itself, nor any of its lines or equipment, not in existence or unfit for use, at the date of the assumption of control. Nor was the company inhibited from construction of new lines or extensions of existing ones. It maintained its corporate existence and all of its property and assets of every kind. The government simply took into its possessions, control and use, the telephone and telegraph systems, including supplies and materials properly belonging to the systems and necessary to operation thereof. For all that appears in the declaration, the motor truck may have been one not used in operation at all, or one subsequently purchased and used only in construction work. Nor does assumption of complete possession, control and operation necessarily preclude the idea of right and duty on the part of the defendant, to improve its systems by substitution of new for old appliances and machinery, or to make even ordinary repairs. The contract between it and the Postmaster General may have permitted or required it to do so, and, if it did, the work of reconstruction or repair was not legally inconsistent with exclusiveness and completeness of government possession and control. A tenant may have such possession, use and control of a house or other property, consistently with contract duty on the part of the landlord, to make even ordinary repairs.

While the courts can take judicial notice of acts and resolutions of congress, proclamations of the president and conspicuously public acts of the heads of departments of the government, they cannot judicially know all that takes place in the departments. The conditions upon which the telephone and telegraph systems were taken over were not matters of concern to the general public. Only the government and the proprietary companies had any special interest in them. They were not matters of general notoriety nor of general public interest. Hence, it is manifest that the courts cannot judicially know what they were.

The allegation in the declaration, of use of the motor truck in construction, maintenance, repair and operation, does not preclude the conclusion foreshadowed by what has been said. Although use in operation is alleged, there may be right of recovery upon proof of negligent use in construction, maintenance or repair. It may turn out that the truck was not used in operation at all, but, on the contrary, was used in construction, maintenance or repair work actually carried on by the defendant, consistently with complete and exclusive federal possession, use and control of the systems and everything that properly belonged or pertained to them.

In so far as the declaration charges negligent use of the motor truck in operation of the telephone and telegraph lines of the defendant, it may contain a separate count; and that portion of the written demurrer, styled a "general and special" demurrer, which invokes the federal action as precluding right of action for an injury inflicted in operation of the systems, may be sufficient to reach it. Conceding, for the purposes of this review, that there is such a count and that the demurrer reaches it, but not so deciding, we are bound to hold the demurrer to it is not well taken. Although the defendant may not have had any right to use the motor truck in operation, the declaration charges that it did so use it, and, while so using it, inflicted the injury complained of. The wrongfulness of the use would not excuse the negligence in such use, causing injury to the plaintiff. As has been clearly shown, the defendant may have had a truck that could be rightfully used by it, and, in certain work, it may have innocently trespassed upon the jurisdiction of the Post-

master General or invaded his province, and, while doing so, negligently injured the plaintiff. Or it may have willfully gone beyond its province and so inflicted the injury. Of course, there is always a presumption of right action, but it does not stand against an express allegation supported by proof,

Correctness of the order overruling the demurrer will be adjudged and our decision certified to the court below.

*Order Affirmed.*